# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

TERRY R. COOPER,                )
)
        Plaintiff,         )
)
    v.                )       **CAUSE NO.: 1:04-CV-385**
)
VERIFICATIONS, INC., et al.,    )
)
        Defendants.    )

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Plaintiff Terry R. Cooper brought this case against Defendant Verifications, Inc., alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*[1] (*See* Docket ## 1, 37.) On April 29, 2008, following Cooper's acceptance of an Offer of Judgment from Verifications under Federal Rule of Civil Procedure 68, the Clerk entered a Judgment for Cooper. (Docket # 80.) Now before the Court are several motions arising from Verifications's Offer of Judgment: Verifications's motion for relief from judgment (Docket # 96), and Cooper's motion and supplemental motions for Attorney Fees and Costs (Docket ## 82, 94, 99).

On November 12, 2008, District Court Judge Theresa L. Springmann entered an Order pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Northern District of Indiana Local Rule 72.1, referring this case to the undersigned Magistrate Judge "to prepare a report and recommendation on the pending motions for attorneys' fees and the pending motion to set aside judgment." (Docket # 100.) For the reasons set forth in this Report, it is

---

[1] Cooper also brought a host of state law claims, but they were subsequently dismissed in the Court's Opinion and Order granting in part and denying in part Verifications's motion for summary judgment. (Docket # 76.) Cooper also sued Delta AirElite Business Jets, Inc., but the cause of action against Delta was later dismissed with prejudice by stipulation of the parties. (Docket # 85.)

recommended that Verifications's Motion for Relief from Judgment (Docket # 96) be DENIED,

Cooper's Motion for Attorney Fees and Costs (Docket # 82) be GRANTED but that the

requested fees and costs of $38,898.49 be reduced to $32,236.89, Cooper's Supplemental Motion

for Additional Fees and Costs Since May 2, 2008 (Docket # 94) be GRANTED, and Cooper's

Motion for Additional Attorneys' Fees and Costs (Docket # 99) be GRANTED.

## II. BACKGROUND[2]

Counsel for Verifications submitted a Rule 68 Offer of Judgment ("Offer") to Cooper's

counsel on April 18, 2008.  (Pl. Mot. for Attorneys' Fees and Costs Pursuant to Rule 54(d) ("Pl.

Mot. for Fees") Ex. A.)  The Offer stated, in relevant part, "Verifications, Inc., hereby offers to

allow judgment to be taken against it in the amount of $7,500.00 together with cost[s] now

accrued."  (Pl. Mot. for Fees Ex. A.)

Cooper's counsel responded with a letter on April 28, 2008, stating, "This letter

constitutes written notice that the Rule 68 Offer of Judgment in the amount of $7,500.00 together

with cost[s] now accrued is hereby accepted.  Pursuant to clearly established case law, Plaintiff

takes the offer to mean $7,500.00 *plus* costs, including reasonable attorneys' fees and other

expenses."  (Pl. Mot. for Fees Ex. B.)  Cooper's counsel informed that he had filed the Offer,

Cooper's Notice of Acceptance, and the Proof of Service, and that he enclosed a form of Entry of

Judgment by the Clerk for Verifications's review and consideration.  (Pl. Mot. for Fees Ex. B.)

Cooper's counsel also indicated that he would soon provide an itemization of attorney's fees and

costs.  (Pl. Mot. for Fees Ex. B.)

---

[2] Given that the Court's Opinion and Order on the Motion for Summary Judgment (Docket # 76) already discussed the factual and procedural background of this case, the facts set forth in this Report will be limited to those pertaining to the Offer of Judgment and subsequent motions.

That same day, counsel for Verifications faxed a letter to Cooper's counsel stating the following:

> So there is no misunderstanding, please be advised that our Offer of Judgment is premised on the fact that attorney fees are not costs. I think that it is clear from the language of the Fair Credit Reporting Act that attorney fees are not costs and cannot be taxed as such by the Court. I would appreciate your furnishing me with any case law you have to the contrary.
>
> Therefore, we are not interested in Mike Loomis or you figuring your attorney fees since those attorney fees should not be considered to be accrued costs in this action.

(Def. Mot. for Relief from J. ("Def. Mot. for Relief") Ex. C.)

The following day, April 29, 2008, Cooper's counsel responded with another letter, stating, "Thank you for your letter of April 28, 2008. We continue to accept Defendant's Rule 68 Offer. I disagree with your assessment that Plaintiff is not a prevailing party and cannot recover fees, given the fact that we accepted your [Offer] in a case involving Defendant's liability under the FCRA." (Pl. Mot. for Fees Ex. E.) Counsel for Cooper then explained why he believed that Cooper is entitled to attorney fees. (Pl. Mot. for Fees Ex. E.)

That same day, the Clerk entered judgment in favor of Cooper in the amount of $7,500.00. (Docket # 80.) On May 6, 2008, Cooper filed his "Motion for Attorneys' Fees and Costs Pursuant to Rule 54(d)" (Docket # 82), and on May 13, the Court ordered judgment for Cooper, ordered the Clerk to reopen the case as to the issue of attorney fees, and ordered briefing on Cooper's motion. (Docket # 86.) Verifications responded to the motion for attorney fees and costs on May 23; Cooper replied on May 30. (Docket ## 87, 88.) This briefing was followed by Verifications's Sur-Reply and Cooper's Sur-Sur-Reply a few weeks later. (Docket ## 92, 93.) Cooper also filed a supplemental motion for attorney fees and costs on June 26. (Docket # 94.)

On July 16, 2008, nearly two months after the judgment was entered, Verifications filed a Motion for Relief from Judgment under Federal Rule of Civil Procedure 60(b)(1), contending that the judgment was the result of a mutual mistake and should therefore be set aside. (Def. Mot. for Relief 2.) Cooper responded in opposition on July 18, 2008 (Docket # 98), and Verifications never replied. Cooper has since filed yet another motion for additional attorneys' fees and costs. (Docket # 99.) No further briefing on the issue of attorney fees has occurred.

### III. DISCUSSION

The essence of Verifications's motions is that there are two threshold reasons why attorney fees should not be imposed. First, the judgment itself was entered as a result of a mistake; and second, Cooper cannot be considered a "prevailing party" such that he is entitled to attorney fees under 15 U.S.C. § 1681o or any other provision.

Cooper concedes that "costs," at least as defined under Federal Rule of Civil Procedure 68, do not include attorney fees, but maintains that the legal basis for his fee request stems from the language of the FCRA itself, specifically 15 U.S.C. § 1681n(a)(3) and 1681o(a)(2). In this latter regard, Cooper maintains that with a $7,500.00 judgment, he was undeniably "successful" under both sections for purposes of attorney fees.

The Court will first address these fundamental issues concerning the requested relief from judgment, and the availability of attorney fees, before we analyze the fee request itself.

#### A. Rule 68 and Post-Judgment Recovery of Costs

We first consider whether, having accepted Verifications's Rule 68 Offer, Cooper may now seek attorney fees in addition to the $7,500 judgment award.

##### 1. Rule 68 Standard

Federal Rule of Civil procedure provides,

> More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 10 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

Fed. R. Civ. P. 68(a). The rule also contains a fee-shifting provision: "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). Thus, "unlike the case of an ordinary contract offer, the offeree cannot reject [an offer of judgment] without legal consequences, since if he rejects it and then doesn't do better at trial he has to pay the defendant's post-offer costs." *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390, 392 (7th Cir. 1999). "The purpose of the rule is to encourage settlement and avoid protracted litigation." *Webb v. James*, 147 F.3d 617, 620 (7th Cir. 1998).

    *2. Cooper May Seek Attorney Fees in Addition to the Sum Offered in the Judgment.*

    As we will explain, two potential avenues for recovery of attorney fees exist following an offer of judgment: under Rule 68 as "costs then accrued" if the underlying statute (*e.g.*, the FCRA) includes attorney fees in its definition of costs; or, if the Offer is ambiguous or silent as to whether attorney fees have been included, the party may recover fees if independently authorized by statute. *See id.* at 622-23; *Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238, 1241-44 (11th Cir. 2002); *Nusom v. Comh Woodburn, Inc.*, 122 F.3d 830, 833-35 (9th Cir. 1997).

    a.   <u>Cooper may not seek attorney fees via Rule 68's provision for costs.</u>

    Although Rule 68 provides that offers of judgment must include costs, it does not define

the term "costs."  In *Marek v. Chesny*, 473 U.S. 1 (1985), the United States Supreme Court held

that the term "costs" in Rule 68 adopts the definition of costs provided for in the underlying

substantive law.  *Marek*, 723 U.S. at 9; *see also Webb*, 147 F.3d at 621 ("In *Marek*, the Supreme

Court held that where an underlying statute defines 'costs' to include attorney's fees, those fees

are to be considered costs for Rule 68 purposes.").  Indeed, as the Seventh Circuit Court of

Appeals explained, "Rule 68 offers must include costs. . . .  Where costs are defined in the

underlying statute to include attorney's fees, the court may award fees as part of costs as well."

*Webb*, 147 F.3d at 622 (citing *Marek v. Chesny*, 473 U.S. 1, 9 (1985)); *see also Arencibia v.

Miami Shoes, Inc.*, 113 F.3d 1212, 1214 (11th Cir. 1997) ("These 'costs' awarded by virtue of

Rule 68 . . . only include attorney's fees if the underlying statute defines 'costs' to include

attorney's fees.").

       In the instant case, the parties do not dispute that the FCRA's definition of costs does not

encompass attorney fees.  Indeed, the plain language of the FCRA's provisions for civil liability

for both willful noncompliance and negligence clearly treat costs and attorney fee separately.  In

particular, each section provides for "the costs of the action *together with reasonable attorney's

fees* as determined by the court."  15 U.S.C. § 1681n(a), 1681o(a); *see also Cole v. Cole*, No. 04-

2073-CM, 2007 WL 1411612, at *1 (D. Kan. May 10, 2007) ("By its plain language, Rule 68

only authorizes 'costs,' and 'costs' are not defined by the FCRA to include attorney fees.");

*Solomon v. Onyx Acceptance Corp*., 222 F.R.D. 418, 421 (C.D. Cal. 2004).  Thus, Cooper may

not recover attorney fees by virtue of Rule 68's provision for costs accrued.

      b.    <u>Cooper may seek fees directly under the FCRA's fee provisions instead.</u>

       Our inquiry does not end with Rule 68, however, because Cooper may yet pursue

attorney fees if the terms of the Offer do not preclude him from pursuing them and the FCRA's

provision for attorney fees authorizes recovery. *See Webb*, 147 F.3d 623; *Util. Automation 2000,*

*Inc.*, 298 F.3d at 1243-44. If Verifications's Offer unambiguously included attorney fees, "only

then would Plaintiff's acceptance preclude post-judgment recovery of costs and attorney's fees."

*Aynes v. Space Guard Prods., Inc.*, 201 F.R.D. 445, 448 (S.D. Ind. 2001). Thus, we must

determine whether this Offer unambiguously precludes Cooper from pursuing attorney fees.

Verifications's Offer states, "Verifications, Inc., hereby offers to allow judgment to be

taken against it in the amount of $7,500.00 together with cost now accrued." (Pl. Mot. for Fees

Ex. A.) This language is akin to that in *Webb*, which the Seventh Circuit held to be ambiguous.

*Webb*, 147 F.3d at 623. Like the offer here, which made no mention of attorney fees, the Offer

in *Webb* only stated that the defendants "make an offer of judgment in the above-captioned

matter in the amount of Fifty Thousand Dollars ($50,000.00) pursuant to Federal Rule of Civil

Procedure 68." *Id.* at 619. "It was unclear whether attorneys' fees were included, since such

fees are often sought as an add-on to the judgment." *Nordby v. Anchor Hocking Packaging Co.*,

199 F.3d 390, 392 (7th Cir. 1999) (discussing *Webb*). "In other words, 'judgment' can mean

either the substantive relief ordered (whether legal or equitable), or that plus attorneys' fees." *Id.*


Like the defendants in *Webb*, Verifications failed to indicate which it meant, making its

offer ambiguous particularly in light of the fact that the underlying substantive authority, *i.e.*, the

FCRA, provides for fee-shifting. "Because Rule 68 puts plaintiffs at their peril whether or not

they accept the offer, the defendant must make clear whether the offer is inclusive of fees when

the underlying statute provides fees for the prevailing party." *Webb*, 147 F.3d at 623; *see also*

*Util. Automation 2000, Inc.*, 298 F.3d at 1244 ("[T]here is nothing in the language of Defendants' bare offer of '$45,000 with costs accrued' to indicate that the $45,000 sum includes fees or that accepting the offer otherwise waives [the plaintiff's] ability to recover them under Rule 68 or any other authority. Thus, this ambiguity must be construed against Defendants, and we conclude that the offer they made to [the plaintiff] did not include attorneys' fees."); *Nusom*, 122 F.3d at 835 (holding "that a Rule 68 offer for judgment in a specific sum together with costs, which is silent as to attorney fees, does not preclude the plaintiff from seeking fees when the underlying statute does not make attorney fees a part of costs"). "[D]efendants should bear the burden of the ambiguity created by their silence on fees." *Webb*, 147 F.3d at 623. This "is consistent with the rule of contract construction requiring that ambiguities in a contract be construed against the drafter." *Id.*

Indeed, the Offer need not use "magic words" to unambiguously preclude additional recovery of attorney fees. *Nordby*, 199 F.3d at 393 ("[W]e reject a magic-words approach . . . in favor of an approach . . . that gives effect to an unambiguous offer even if it does not mention attorneys' fees explicitly." (internal citations omitted)). In *Nordby*, the Seventh Circuit found that the defendant's offer of judgment unambiguously encompassed the relief sought in all counts where it stated, "[O]ne total sum as to all counts of the amended complaint" and one of the counts specified attorney fees as part of the relief. *Id.* at 392-93. By comparison, Verifications's Offer is entirely silent with respect to attorney fees, and "does not contain any language suggesting the inclusiveness of all sums due[,]" *Util. Automation 2000, Inc.*, 298 F.3d at 1244 (discussing *Nordby*). Consequently, the Offer does not foreclose Cooper from seeking the fees if otherwise authorized by statute. And indeed, Verifications makes virtually no

argument that the Offer unambiguously includes attorney fees, and instead submits that Cooper is not entitled to attorney fees either as costs or under the FCRA's fee shifting provision. Having determined that the Offer did not unambiguously foreclose Cooper from pursuing attorney fees, we now examine whether Cooper is entitled to them directly under the FCRA.

### 3. Cooper Is Entitled to Attorney Fees as a Successful Party in Enforcing an Action for Liability Under the FCRA.

Cooper seeks attorney fees under the FCRA, maintaining that he is entitled to attorney fees under the provisions for civil liability because he is the prevailing party. Verifications, however, objects to Cooper's contentions, arguing that "there is nothing in the unambiguous text of the applicable attorney's fee statute . . . that references a 'prevailing party.'" (Def. Resp. in Opp'n to Pl.'s Mot. for Att'ys' Fees and Costs ("Def. Resp.") 3.) Verifications submits that the statute requires a finding that it willfully or negligently failed to comply with the FCRA before the fee-shifting provisions are triggered, and since no finding was made, Cooper is not entitled to fees. (Def. Resp. 3.)

15 U.S.C. § 1681n pertains to liability for willful noncompliance under the FCRA and provides, in pertinent part,

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
> (1)(A) any *actual damages* sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 . . .
> (2) such amount of punitive damages as the court may allow; and
> (3) *in the case of any successful action to enforce any liability under this section*, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C.A. § 1681n(a). The section on liability for negligent noncompliance, 15 U.S.C. § 1681o, contains identical language with respect to attorney fees.

Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
(1) any *actual damages* sustained by the consumer as a result of the failure; and
(2) *in the case of any successful action to enforce any liability under this section*, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C.A. § 1681o(a) (emphasis added).  Thus, to obtain an attorney fee award under the terms of these provisions, a party must be "successful" in enforcing liability under the FCRA.

Verifications contends that Cooper is not entitled to fees on the basis that it is a "prevailing party" because that term does not appear in the FCRA.  However, the Seventh Circuit Court of Appeals has found that the test for determining whether a party is "successful" in enforcing an action for liability under the FCRA is the same as for "prevailing party" provisions in other statutes.

In *Crabill v. Trans Union, LLC*, 259 F.3d 662 (7th Cir. 2001), the Seventh Circuit discussed the meaning of the term "successful" in the FCRA's fee provisions, applying the United States Supreme Court case of *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 531 U.S. 1004 (2001).  In *Buckhannon*, the Supreme Court evaluated the fee-shifting provisions of the Fair Housing Amendments Act and the Americans with Disabilities Act and explained that to be a "prevailing" party under those acts, the party must be awarded *at least some relief by the court*; indeed, even an award of nominal damages may suffice in some circumstances.  *Buckhannon Bd. & Care Home, Inc.*, 532 U.S. at 603-04 (emphasis added).  In its application of *Buckhannon* in the *Crabill* case, the Seventh Circuit noted that the Supreme Court emphasized the similarity of most federal fee-shifting statutes and even equated a "prevailing" party with a "successful" one, the former

being used in the civil rights statutes and the latter in the FCRA.  *Crabill*, 259 F.3d at 666-67.  In

short, the *Crabill* Court found that the term "successful" in the FCRA has the same meaning as

"prevailing."  *Id.* at 667.  The Court concluded, "The significance of the *Buckhannon* decision . .

. lies rather in its insistence that a plaintiff *must obtain formal judicial relief*, and not merely

'success,' in order to be deemed a prevailing or successful party . . . ."  *Id.* (emphasis added).

Verifications apparently does not quibble that Cooper, having obtained a judgment in the

amount of $7,500.00 against it, has obtained "formal judicial relief" or otherwise qualifies as a

"successful" party under this definition.  Indeed, the acceptance of the Offer and the ensuing

judgment constitute "the material alteration of the legal relationship of the parties necessary to

permit an award of attorney's fees."  *Buckhannon*, 532 U.S. at 604 (explaining that "enforceable

judgments on the merits and court-ordered consent decrees create the 'material alteration of the

legal relationship of the parties' necessary to permit an award of attorney's fees" (citations

omitted)); *see also Util. Automation 2000, Inc.*, 298 F.3d at 1248 (finding that offers of judgment

are akin to consent decrees in that they "represent[] a 'judicially sanctioned change in the

relationship between the parties'" and have "the 'necessary judicial *imprimatur*' of the court"

(citing *Buckhannon*, 531 U.S. at 605)); *Hall v. Harleysville Ins. Co.*, 943 F. Supp. 536, 540 n.3

(E.D. Pa. 1996) (finding that a party was "successful" under the fee provisions of the FCRA after

the action resulted in a settlement).  Stated most simply, Cooper achieved not only a judgment

against Verifications, but also $7,500.00, meeting the requirement that the action resulted in "at

least some relief."  *See Crabill*, 259 F.3d at 666; *see also Nagle v. Experian Info. Solutions, Inc.*,

297 F.3d 1305, 1307 (11th Cir. 2002) (holding that to be "successful" under the FCRA's fee

provision, "the plaintiff must receive some relief beyond mere entry of judgment[,]" which, for

the purposes of the FCRA, is actual damages).

Verifications argues, however, that under the plain language of the statute, there must be a finding of willfulness or negligence before Cooper would be entitled to fees, and Cooper has established neither.  (Def. Resp. 3; Def. Sur-Reply 3-5.)  "Under the first canon of statutory interpretation, the Court is required to look to the language of the statute itself."  *Bruce v. Grieger's Motor Sales, Inc.*, 422 F. Supp. 2d 988, 991 (N.D. Ind. 2006) (citing *United States v. Miscellaneous Firearms*, 376 F.3d 709, 712 (7th Cir. 2004)).  "When interpreting statutory language, the Court must presume that a legislature says in a statute what it means and means in a statute what it says there."  *Id.* (internal quotation marks and citation omitted).  "When the statutory language is unambiguous, this first canon is also the last: 'judicial inquiry is complete.'"  *Id.* (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).

Verifications hones in on the "willfully fails to comply" language of § 1681n and the "negligent in failing to comply" phrase in § 1681o as the statutory underpinnings of its argument.  Verifications then cites to *Utility Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.*, 298 F.3d 1238 (11th Cir. 2002) in support of its contention that a finding of noncompliance is a prerequisite for fee-shifting.  In *Utility Automation 2000, Inc.*, the Court held that the plaintiff was not entitled to fees under the Alabama Trade Secrets Act's fee shifting provision because the act only authorized recovery of attorney fees "upon proof of the willful and malicious misappropriation' of a trade secret[,]" and the court would not impute such an admission to the defendants because "there [was] nothing in Defendants' offer of judgment that would even suggest that admission."  *Util. Automation 2000, Inc.*, 298 F.3d at 1247.

Verifications's argument, however, is without merit because the terms of the FCRA's

civil liability provisions are distinguishable from the statute in *Utility Automation 2000, Inc.*

The statute through which the plaintiff in that case sought fees provided, in pertinent part:

> The remedies available for actual or threatened misappropriation of a trade secret are . . . [r]easonable attorney's fees to the prevailing party *if* . . . a. A claim of actual or threatened misappropriation is made or resisted in bad faith, b. A motion to terminate an injunction is made or resisted in bad faith, or c. *Willful and malicious misappropriation exists*."

Ala.. Code 1975 § 8-27-4 (emphasis added). Thus, the recovery of attorney fees under that statute unambiguously depended upon whether various conditions were satisfied, including a finding that "[w]illful and malicious misappropriation exist[]." Ala. Code 1975 § 8-27-4(2).

In contrast, although the FCRA provides that "[a]ny person who willfully fails to comply" or "is negligent in failing to comply" is liable for damages, costs, and possibly attorney fees, the plain language of the statute does not explicitly direct that willful or negligent noncompliance exist before the fee-shifting provision is triggered. *See* 15 U.S.C. §§ 1681n, 1681o. Instead, the fee-shifting portion of the provisions merely require that the party be successful in enforcing liability under the FCRA, and as we have discussed, the judgment for Cooper operates to fix liability in the amount of $7,500.00. Verifications would ask the Court, therefore, to read into the statute a precondition to the award for attorney fees that is not provided for in its plain language, even though "where the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *Friend v. Ancillia Sys. Inc.*, 68 F. Supp. 2d 969, 973 (N.D. Ill. 1999) (citing *Pittway Corp. v. United States*, 102 F.3d 932, 934 (7th Cir. 1996)).

In fact, the FCRA's fee provision is directly comparable to the fee provision of the Fair Debt Collection Practices Act ("FDCPA"). The civil liability provision of the FDCPA provides,

in relevant part:

> Except as otherwise provided by this section, *any debt collector who fails to comply* with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of--
> (1) any actual damage sustained by such person as a result of such failure;
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . .
> (3) *in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.*

15 U.S.C. § 1692k(a).

Just as the FCRA provision begins with a recitation of the violation of the act and provides for attorney fees in the case of a successful action to enforce liability, so too does the FDCPA. And, with respect to the FDCPA, the Seventh Circuit has found that a party who accepted an offer of judgment in an FDCPA case was successful and entitled to attorney fees. *Zagorski v. Midwest Billing Servs. Inc.*, 128 F.3d 1164 (7th Cir. 1997); *see also Torgerson v. Arrow Fin. Servs.*, No. 06 C 6032, 2007 WL 1941752, at *1 (N.D. Ill. June 29, 2007) ("A reasonable attorney's fee is mandatory when a plaintiff brings a successful action under the FDCPA, such as when a plaintiff accepts an offer of judgment."). Thus, even though the provision begins with a recitation of the violation of the act, it does not necessarily follow that there must be a finding of a violation before attorney fees may be awarded.

And of course, as we previously discussed, if Verifications wished to cut off liability for attorney fees, it could have explicitly included them in its Offer. *Nordby*, 199 F.3d at 393 ("The prudent defendant . . . will mention [attorney fees] explicitly, in order to head off the type of appeal that we have been wrestling with here."); *cf. Fletcher v. City of Fort Wayne, Ind.*, 162 F.3d 975, 977 (7th Cir. 1998) (explaining that where the defendants stated their offer was "not to

be construed as an admission that the Defendants are liable . . . or that Plaintiff suffered any damages," such language would not necessarily preclude an award of attorney fees because, "Plaintiffs who accept Rule 68 offers accept the money, not the defendants' self-serving characterizations.").

Accordingly, the Magistrate Judge recommends that the Court find Verifications liable for attorney fees. We now consider whether Verifications should be relieved from the consequences of its Offer.

### B. Verifications's Rule 60(b) Motion for Relief from Judgment

Verifications argues that the parties were mutually mistaken concerning whether the Offer included attorney fees, and as a result, contract principles permit the parties to abandon their agreement. (Def. Mot. for Relief 3-4.) Cooper, however, argues that there was no mutual mistake, because, as Cooper's counsel informed Verifications's counsel in the April 28 letter, Cooper accepted the Offer regardless of whether "costs" included fees under the FCRA. (Pl. Resp. to Def. Mot. for Relief 1.) Cooper further argues that if Verifications claims that it made a mistake, any such error was not excusable, and that the motion for relief from judgment amounts to little more than a ploy "to wiggle out of" paying attorney fees. (Pl. Resp. to Def. Mot. for Relief 2-5.)

### 1. Standard for a Motion for Relief from Judgment Under Federal Rule of Civil Procedure 60(b)

"[T]he proper procedural device for relief from a Rule 68 judgment is the same as for any other judgment: Rule 60." *Webb*, 147 F.3d at 622. Rule 60 permits the court "to relieve a party or its legal representative from a final judgment" for a variety of reasons, including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). "Rule 60(b) relief is an

extraordinary remedy and is granted only in exceptional circumstances." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006) (quoting *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 837 (7th Cir. 2005)) (internal quotation marks omitted). District courts are granted "wide latitude" to decline Rule 60(b) motions. *Harold Washington Party v. Cook County Ill. Democratic Party*, 984 F.2d 875, 879 (7th Cir. 1993).

    *2. Verifications's Rule 60(b) Motion for Relief from Judgment should be denied.*

Verifications argues that the Offer and acceptance arise from a mutual mistake of fact about whether attorney fees are recoverable. Verifications asserts that the letters the parties exchanged "indicate that, at the time of the [Offer], counsel for the Plaintiff believed that attorney fees were available to the Plaintiff under the FCRA as a 'prevailing party'. On the other hand, counsel for Verifications believed that attorney fees were not available to the Plaintiff because there was no finding of negligence (as required by the FCRA) as part of the [Offer]." (Def. Mot. for Relief 3-4.) Thus, as Verifications sees it, there was no "meeting of the minds."[3]

Verifications does not put a fine point on precisely the nature of the alleged error of the parties in failing to comprehend the FCRA's fee provision. Ultimately, however, it makes no

---

[3] Cooper first accepted Verifications's offer of judgment on April 28, 2008, ostensibly interpreting the offer to mean that costs under the FCRA included attorney fees. When Verifications responded with its view that costs under the FCRA did not include fees, Cooper stated on April 29, 2008, that he "continue[d] to accept" the offer of judgment, explaining that he disagreed with Verifications's interpretation of the applicable law and that he would seek fees as a prevailing party under the FCRA. (Pl. Mot for Fees Ex. E.) Thus, Cooper accepted the offer as it was posed by Verifications, accepting the risk of convincing the Court that he was a prevailing party or, in the language of the FCRA, that he was "successful."

    The legal implication of the exchange between counsel is that there was indeed a valid and timely acceptance by Cooper of Verification's offer of judgment. *See, e.g.*, *United States v. Hendricks*, No. 92 C 1461, 1993 WL 226291 (N.D. Ill. June 24, 1993). As a result of making such an offer, Verifications arguably gambled that the Court would not award fees if the offer was accepted. *See Fletcher*, 162 F.3d at 978. Now as an apparent afterthought (or perhaps after seeing the amount of fees sought), it seeks to avoid the legal implications of its offer by characterizing it as a mistake of law or fact. But as this recounting reveals, there was no mutual mistake of law or fact, and a gamble that does not pay off cannot form the basis for invalidating an offer of judgment.

difference whether the error is characterized under Rule 60(b)(1) as a "mistake" or as "excusable neglect," because neither fits.

Although Verifications labels its contention as a mistake of fact, its argument that the Offer and acceptance were premised on its own apparent mistaken belief about the recovery of attorney fees amounts to something akin to a mistake of law, which is not a basis for granting relief under Rule 60(b). *See Rateree v. Rockett*, 668 F. Supp. 1155, 1159 (N.D. Ill. 1987) ("But even accepting at face value defendants' position that their subjective intention differed from the objective meaning of the offer they chose to make, to grant relief for that difference would amount to relieving a party from the effects of its own unilateral mistake of fact as to the operation of Rule 68 or – more likely – a mistake of law. Neither of those is the function of Rule 60(b)(1).").

To the extent that Verifications may be asserting that it committed excusable neglect by not fully comprehending the interplay between the Rule 68 Offer and the underlying statute (*i.e.*, the FCRA), this error is not a basis for relief either. *See Aynes*, 201 F.R.D. at 449 ("Any effort to research Rule 68 would have alerted an attentive lawyer to the possibility of attorney's fees being included under [Rule 68], and in fact a host of examples demonstrating how to draft a Rule 68 offer in order to avoid the present confusion was also readily available." (citing *Webb*, 147 F.3d at 622)); *see also McCormick v. City of Chicago*, 230 F.3d 319, 327-28 (7th Cir. 2000) ("[W]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect.") (quoting *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994)).

In sum, Verifications's attempt to set aside a judgment on the basis of a so-called mutual

mistake about an offer of judgment's terms is unconvincing, as it has not demonstrated that the parties' differing interpretations of the underlying statute qualifies as the type of "exceptional circumstance[,]" *Harrington*, 433 F.3d at 546, warranting relief from judgment. It is recommended that Verifications's Rule 60(b) motion for relief from judgment be denied.

### C. Determining Reasonable Attorney Fees for Cooper

Having determined that Cooper is entitled to fees and that Verifications's Rule 60(b) motion to set aside the judgment should be denied, the Court now turns to an analysis of a reasonable attorney fee award in this case.

#### 1. The Parties' Arguments Regarding the Requested Fee Award

Here, Verifications does not challenge the hourly rate articulated by Cooper's counsel, but rather attacks the reasonableness of the hours expended. (Def. Resp. 4.) To that end, Verifications argues that Cooper's billing entries are vague or amount to "block billing." (Def. Resp. 4.) It further asserts that a large portion of Cooper's entries are for work performed solely for the prosecution of his claims against Defendant Delta AirElite Business Jets, Inc., or are for unwarranted correspondence, telephone calls, clerical work, and discussions between Cooper's two attorneys. (Def. Resp. 4.) Defendant also contends that some of Cooper's entries are for duplicative tasks. (Def. Resp. 4.)

Cooper, of course, disagrees. He contends that his attorneys' time entries are sufficiently detailed. (Reply Br. 3-4.) Cooper further explains that he has removed all of the time entries devoted exclusively to Delta AirElite and that the remaining entries reflect time spent on claims that were intertwined with his successful claims against Verifications. (Reply Br. 7.)

## 2. General Principles for the Calculation of Attorney Fee Awards

The district court enjoys "wide latitude" in establishing attorney fee awards. *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003); *Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d 737, 744 (N.D. Ind. 2008). In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court stated that the most useful starting point for a court to determine the amount of a reasonable fee is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" – the so-called "lodestar" determination. *Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002) (citing *Hensle*y, 461 U.S. at 433); *see generally Hall*, 943 F. Supp. at 540-47 (applying the lodestar methodology in an FCRA case). The attorney fee award applicant bears the burden of establishing and documenting the appropriate hours expended and hourly rates. *Greenfield Mills*, 569 F. Supp. 2d at 744 (citing *Hensley*, 461 U.S. at 437).

### a. The reasonableness of the hourly rate

As to the reasonableness of the hourly rate, it is determined by reference to the marketplace. *Hensley*, 461 U.S. at 433; *Spegon,* 175 F.3d at 554-55; *Greenfield Mills*, 569 F. Supp. 2d at 756. That is, "[a]n attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." *Greenfield Mills*, 569 F. Supp. 2d at 756 (quoting *Spegon*, 175 F.3d at 555); *see Hensley*, 461 U.S. at 433.

### b. The reasonableness of the hours

As to the reasonableness of the hours expended, the Supreme Court has stated that counsel is expected to exercise "billing judgment" and thus when calculating the fee award, a court should exclude hours that were not "reasonably expended," including "excessive,

redundant, or otherwise unnecessary" work. *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." (citation omitted)); *see also Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999); *Greenfield Mills*, 569 F. Supp. 2d at 746. For example, the court must disallow hours spent on tasks that would not normally be billed to a client and also those hours expended by counsel on tasks that are easily delegable to non-professional assistance. *Spegon*, 175 F.3d at 553; *Greenfield Mills*, 569 F. Supp. 2d at 746.

(1) Vagueness

"Counsel are 'not required to record in great detail how each minute of [their] time was expended. But at least counsel should identify the general subject matter of [their] time expenditures.'" *Greenfield Mills*, 569 F. Supp. 2d at 746 (quoting *Hensley*, 461 U.S. at 437 n.12); *see, e.g.*, *Habitat Educ. Ctr., Inc. v. Bosworth*, Nos. 03C1023, 03C1024, 04C0254, 2006 WL 839166, at *6 (E.D. Wis. Mar. 29, 2006) (declining to award fees for billing entries that were vague in that they failed to identify the subject matter of the meeting, e-mail, or telephone call); *Harper v. City of Chicago Heights*, Nos. 87 C 5112, 88 C 9800, 1994 WL 710782, at *4 (N.D. Ill. Dec. 16, 1994) (reducing lodestar where billing entries for telephone conferences were vague and failed to identify the subject matter of the call). That is, counsel "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437. "Where a court finds hours to be insufficiently documented, it may disallow those hours or reduce the entire fee award by a proportionate amount. *Delgado v. Vill. of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006) (citing *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th Cir. 2000)).

(2)     Unsuccessful claims

A plaintiff "cannot recover attorney fees for unsuccessful claims that are 'distinct in all respects from his successful claims.'" *Greenfield Mills*, 569 F. Supp. 2d at 747 (quoting *Bryant v. City of Chicago*, 200 F.3d 1092, 1101 (7th Cir. 2000)); *Hensley*, 461 U.S. at 440. However, if a plaintiff's claims "are related to a 'common core of facts or are based on related legal theories . . . time spent on related claims that ultimately prove unsuccessful should not be automatically excluded from the attorney's fee calculation.'" *Greenfield Mills*, 569 F. Supp. 2d at 747 (quoting *Bryant*, 200 F.3d at 1101). The Supreme Court stated in *Hensley*, 461 U.S. at 435:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

(3)     Claims against other defendants

Hours that are "exclusively devoted" to litigating claims against other defendants should be deducted from the fee calculation. *Hall*, 943 F. Supp. at 542 (citing *Baughman v. Wilson Freight Forwarding Co.*, 583 F.2d 1208, 1215 (3d Cir. 1978)). "Hours chargeable to claims against other defendants are chargeable to a particular defendant if '*plaintiff can establish* that such hours also were fairly devoted to the prosecution of the claim against' that particular defendant." *Id.* (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir. 1990)).

(4)     Duplicative Services

"If multiple attorneys represent a prevailing party, then that party may be able to recover a reasonable fee for each of the attorneys." *Greenfield Mills*, 569 F. Supp. 2d at 751; *Delgado*,

2006 WL 3147695, at *3 ("Use of more than one lawyer is common in legal practice."). The proper question is whether the application for one or more attorneys, is reasonable. *Greenfield Mills*, 569 F. Supp. 2d at 751 (citation omitted). Of course, "[a] court may reduce attorney hours and consequently fees, for inefficiency or duplication of services in cases where more than one attorney is used." *Id.* (quoting *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 864 (8th Cir. 1995)).

     c.    <u>The lodestar calculation</u>

    Once the court arrives at an amount using the lodestar determination, it may adjust this amount based on the extent of the plaintiff's success. *Hensley*, 461 U.S. at 436 ("[T]he extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees . . . ."), *Spegon*, 175 F.3d at 557; *Greenfield Mills*, 569 F. Supp. 2d at 758-59. In doing so, the court may consider a variety of factors, including the time and labor required, the novelty and difficulty of the issues presented, the time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience and reputation of the attorneys, and awards in similar cases. *Hensley*, 461 U.S. at 430 n.3; *Greenfield Mills*, 569 F. Supp. 2d at 759 (quoting *Blanchard v. Bergeron*, 489 U.S. 87, 91-92 (1989)).

                      3. *The Analysis of the Fee Request*

    Here, Cooper seeks attorney fees and costs in the amount $38,898.49 for the work performed on his case against Verifications.[4] (*See* Pl. Mot. for Fees 2.) As stated *supra*, Verifications does not challenge the reasonableness of the attorneys' hourly rates but instead

---

    [4] As stated *supra*, Cooper also filed two supplemental motions (Docket # 94, 99) seeking additional attorney fees and costs in the amount of $11,668.25 for the work performed on the dispute about his initial motion for attorney fees and costs. Verifications did not file a response to either motion and thus apparently does not dispute Cooper's request for additional fees in the amount of $11,668.25. Therefore, these supplemental motions will both be granted.

attacks the number of hours expended.  Nonetheless, the Court's review of the hourly rates

charged by Attorney Loomis, Attorney Myers, and a paralegal all appear reasonable.  *See*

*Greenfield Mills*, 569 F. Supp. 2d at 756.

   After reviewing each of the billing entries to which Verifications objects, the undersigned

Magistrate Judge recommends that the following entries be disallowed for the reason(s) shown:

   a.   <u>Disallowed Fees of Attorney J. Michael Loomis</u>:

| <u>Billing Date</u> | <u>Hours</u> | <u>Hourly Rate</u> | <u>Amount Disallowed</u> | <u>Reason(s) Disallowed</u> |
|---|---|---|---|---|
| 12/23/02 | .08 | $145 | $11.60 | vague; unrelated defendant |
| 2/27/03 | .25 | $150 | $37.50 | vague |
| 5/01/03 | .90 | $150 | $135 | vague |
| 5/23/03 | 3.50 | $150 | $525 | vague |
| 6/16/03 | .10 | $180 | $18 | vague |
| 9/13/03 | 3.0 | $180 | $540 | vague |
| 9/23/03 | .20 | $180 | $36 | vague |
| 9/24/03 | 3.80 | $180 | $684 | vague; unrelated defendant |
| 11/5/03 | .10 | $180 | $18 | vague |
| 11/18/03 | 1.0 | $180 | $180 | vague |
| 11/24/03 | .30 | $180 | $54 | vague; unrelated defendant |
| 1/13/04 | .30 | $180 | $54 | vague |
| 1/13/04 | .20 | $180 | $36 | vague |
| 2/06/04 | .20 | $180 | $36 | vague |
| 3/01/04 | .20 | $180 | $36 | vague |

| | | | | |
|---|---|---|---|---|
| 4/12/04 | .20 | $180 | no charge | unrelated defendant |
| 4/20/04 | 4.0 | $180 | $720 | billing judgment (excessive hours for task) |
| 4/20/04 | .30 | $180 | $54 | vague |
| 9/01/04 | .20 | $180 | $36 | vague; unrelated defendant |
| 9/02/04 | .20 | $180 | $36 | vague |
| 9/09/04 | .20 | $180 | $36 | vague |
| 11/09/04 | .40 | $180 | $72 | vague; unrelated defendant |
| 12/14/04 | .50 | $180 | $90 | vague |
| 1/06/05 | .40 | $200 | $80 | vague |
| 3/09/05 | 1.5 | $200 | $300 | vague |
| 7/11/05 | .40 | $200 | $80 | vague |
| 7/21/05 | .20 | $200 | $40 | vague; unrelated defendant |
| 8/03/05 | .50 | $200 | $100 | unrelated defendant |
| 8/12/05 | .20 | $200 | $40 | vague |
| 8/24/05 | 1.0 | $200 | $200 | unrelated defendant |
| 8/25/05 | .60 | $200 | $120 | unrelated defendant |
| 8/25/05 | 2.0 | $200 | no charge | unrelated defendant |
| 9/07/05 | .50 | $200 | $100 | vague |
| 9/21/05 | .50 | $200 | $100 | vague |
| 9/26/05 | 1.25 | $200 | $250 | partially unrelated defendant, hours reduced by 50% |
| 9/29/05 | .40 | $200 | $80 | vague |

| Billing Date | Hours | Hourly Rate | Amount Disallowed | Reason(s) Disallowed |
|---|---|---|---|---|
| 10/06/06 | .40 | $200 | $80 | vague |
| 10/06/06 | .40 | $200 | $80 | unrelated defendant |
| 10/10/06 | .40 | $200 | $80 | vague |
| 10/23/06 | .40 | $225 | $90 | vague |
| 11/29/06 | .20 | $200 | $45 | vague |

Therefore, Attorney Loomis's hours should be reduced by 31.38 hours, which equates to a fee reduction in the amount of $5,310.10.

    b.    <u>Disallowed Fees of Attorney Christopher C. Myers</u>:

| <u>Billing Date</u> | <u>Hours</u> | <u>Hourly Rate</u> | <u>Amount Disallowed</u> | <u>Reason(s) Disallowed</u> |
|---|---|---|---|---|
| 11/05/04 | .15 | $250 | $37.50 | unrelated defendant, hours reduced by 50% |
| 1/18/05 | .10 | $250 | $25 | vague |
| 3/22/05 | .80 | $250 | $200 | unrelated defendant |
| 9/26/05 | 1.25 | $250 | $312.50 | partially vague; partially unrelated defendant, hours reduced by 50% |
| 5/11/07 | .40 | $250 | $100 | vague |

Thus, Attorney Myers's hours should be reduced by 2.7 hours, which equates to a fee reduction in the amount of $675.

    c.    <u>Disallowed Fees of Attorney Myers's Paralegal</u>:

| <u>Billing Date</u> | <u>Hours</u> | <u>Hourly Rate</u> | <u>Amount Disallowed</u> | <u>Reason(s) Disallowed</u> |
|---|---|---|---|---|
| 10/12/04 | 1.4 | $75 | $105 | billing judgment (non-professional task) |
| 10/20/04 | .60 | $75 | $45 | billing judgment (non-professional task) |

| | | | | |
|---|---|---|---|---|
| 10/21/04 | .40 | $75 | $30 | billing judgment (non-professional task) |
| 10/21/04 | .15 | $75 | $11.25 | billing judgment (non-professional task) |
| 10/22/04 | .15 | $75 | $11.25 | billing judgment (non-professional task) |
| 11/09/04 | .30 | $75 | $22.50 | vague, billing judgment (non-professional task) |
| 12/22/04 | .10 | $75 | $7.50 | billing judgment (non-professional task) |
| 1/06/05 | .10 | $75 | $7.50 | billing judgment (non-professional task) |
| 1/20/05 | .10 | $75 | $7.50 | vague |
| 1/24/05 | .10 | $75 | $7.50 | vague |
| 1/26/05 | .20 | $75 | $15 | vague; billing judgment (non-professional and duplicative task) |
| 1/31/05 | .60 | $75 | $45 | billing judgment (non-professional task), hours reduced by 50% |
| 2/17/05 | .80 | $75 | $60 | billing judgment (non-professional task) |
| 2/17/05 | .15 | $75 | $11.25 | billing judgment (non-professional task) |
| 3/08/05 | .20 | $75 | $15 | billing judgment (non-professional task) |
| 6/03/05 | .10 | $75 | $7.50 | vague |
| 9/26/05 | 1.5 | $75 | $112.50 | vague; billing judgment (non-professional task) |

| | | | | |
|---|---|---|---|---|
| 9/26/05 | .25 | $75 | $18.75 | partially vague; partially unrelated defendant, hours reduced by 50% |
| 1/06/06 | .30 | $75 | $22.50 | vague |
| 4/18/07 | .10 | $75 | $7.5 | vague |
| 5/14/07 | .30 | $75 | $22.50 | billing judgment (non-professional task) |
| 8/28/07 | .40 | $75 | $30 | billing judgment (non-professional task) |
| 1/08/08 | .04 | $75 | $3 | vague; billing judgment (non-professional task) |
| 1/11/08 | .02 | $75 | $1.50 | billing judgment (non-professional task) |
| 1/24/08 | .42 | $75 | $31.50 | billing judgment (non-professional task) |
| 2/04/08 | .13 | $75 | $9.75 | billing judgment (non-professional task) |
| 3/25/08 | .01 | $75 | $.75 | vague |
| 4/02/08 | .10 | $75 | $7.50 | unrelated defendant; billing judgment (non-professional task) |

Therefore, Attorney Myers's paralegal hours should be reduced by 9.02 hours, which equates to a fee reduction in the amount of $676.50.

In sum, as a result of the Court's lodestar calculation, Cooper's attorney hours should be reduced by 43.1 hours, which equates to a reduction of $6,661.60 in requested attorney fees and costs. Verifications does not request any further adjustment to the lodestar calculation based on the extent of Cooper's success or any of the other factors discussed *supra*, *see Hensley*, 461 U.S.

at 430 n.3, nor is there any apparent basis to do so from this Court's perspective. Therefore, we will recommend that Cooper's request for attorney fees and costs be granted, but that the requested fees and costs of $38,898.49 be reduced to $32,236.89.

## IV. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge recommends that Verifications's Motion for Relief from Judgment (Docket # 96) be DENIED; Cooper's Motion for Attorney Fees and Costs (Docket # 82) be GRANTED, except that the amount of fees and costs awarded be reduced from $38,898.49 to $32,236.89; Cooper's Supplemental Motion for Additional Fees and Costs Since May 2, 2008 (Docket # 94) be GRANTED in the amount of $9,141.25; and Cooper's Motion for Additional Attorneys' Fees and Costs (Docket # 99) be GRANTED in the amount of $2,527.

The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties. NOTICE IS HEREBY GIVEN that within ten days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.

SO ORDERED.

Enter for this 25th day of November, 2008.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge